IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01943-PAB

CAROL MCCAFFREY,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

## ORDER

---

This matter comes before the Court on plaintiff Carol McCaffrey's complaint [Docket No. 1] filed on August 16, 2010.  Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I.  BACKGROUND

Plaintiff applied for disability benefits on August 19, 2004.  She claimed that she was unable to work due to disability beginning on November 1, 2002.  Plaintiff's claim was initially denied on December 23, 2004, and plaintiff requested a hearing.  R. at 53-55.  An Administrative Law Judge ("ALJ") held a hearing on September 28, 2006, R. at 264-71, and held a subsequent hearing on November 30, 2006 after advising plaintiff to retain counsel.  R. at 273-99.  Plaintiff sought judicial review of the ALJ's decision, and

the Court granted defendant's Unopposed Motion to Remand.  R. at 351-52.  Pursuant
to the Court's order, the ALJ's decision was vacated by the Appeals Council and
remanded for further proceedings.  R. at 349.  After a new hearing in front of the ALJ on
November 21, 2008, R. at 422-49, plaintiff's claim was again denied on December 11,
2008.  R. at 318-20.

Plaintiff's appeal asserts that she was suffering from disability from the original
onset date of November 1, 2002 until March 6, 2007.[1]  In his decision, the ALJ
concluded that plaintiff was not disabled before March 6, 2007.  The ALJ found that
plaintiff had the following severe impairments: "obesity and degenerative lumbar disc
disease status-post lumbar epidural abscess and related surgery."  R. at 325.  The ALJ
determined, however, that these impairments, alone or in combination, did not meet or
medically equal one of the listed impairments in the regulations.  *See* R. at 326.  The
ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light exertional work as that term is defined in the Dictionary of
> Occupational Titles and in Social Security Regulations and Rulings except
> she can lift and carry 20 pounds occasionally and 10 pounds frequently,
> but could sit for 6 hours and stand and walk for 2 hours during an 8-hour
> day.  The claimant requires use of a cane when ambulating at the
> workplace.  She could occasionally climb, kneel, stoop, crouch and crawl,
> and is otherwise without any appreciable work-related restrictions.

R. at 328.

Based upon these findings and the testimony of a vocational expert ("VE"), the
ALJ found that plaintiff could perform her previous work as a sales manager.  R. at 332.

---

[1] While this case was on appeal, plaintiff filed a new claim for disability benefits
under Title II of the Social Security Act.  Plaintiff's new claim was granted, with the
Commissioner finding that plaintiff's disability commenced on March 6, 2007.

Therefore, the ALJ concluded that plaintiff was not disabled during the relevant time period. *Id.* The Appeals Council denied plaintiff's request for review of this denial on August 13, 2007. R. at 300. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for

3

reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.   The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

(1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity ("RFC") to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.   Plaintiff's Objections to the ALJ Decision

In her appeal, plaintiff presents five objections to the ALJ's decision: (1) the ALJ erred at step two in finding that plaintiff's mental health impairments were not severe; (2) the ALJ erred as a matter of law because he failed to obtain an updated expert medical opinion on the issue of whether plaintiff's impairments met a Listing in Appendix 1; (3) the ALJ mishandled the medical evidence; (4) the ALJ failed to cite factors based on substantial evidence to support his findings regarding plaintiff's credibility; and (5) the ALJ's RFC was not based on substantial evidence because it did not discuss all of plaintiff's impairments. The Court will consider these objections in turn.

### 1.   The ALJ's Step Two Analysis

Plaintiff argues that the ALJ erred when he concluded that plaintiff's depression was not a "severe impairment" under step two.  Docket No. 14 at 31.  Plaintiff argues "the fact that the ALJ found that Ms. McCaffrey had no mental impairments at all . . . was critical to his finding that she could perform [a] skilled job."  *Id*. at 32.

As presented, plaintiff's argument is really a step four challenge because it addresses whether the ALJ arrived at the proper conclusion when determining plaintiff's RFC.  Under a step two review, once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" does not constitute reversible error because the agency at later steps "consider[s] the combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. §§ 404.1523, 416.923; *see also id*. §§ 404.1525(e), 416.945(e); *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 244 (6th Cir. 1987).  Consequently, the Court finds that the ALJ's failure to determine that plaintiff's mental impairments were severe is not reversible error.

### 2.   Comparing Plaintiff's Impairments to Listing 1.04

Concerning the ALJ's step three analysis, plaintiff makes the following arguments: (1) the ALJ erred as a matter of law because he failed to obtain an updated expert opinion as required by Social Security Ruling 96-6p; (2) the report from the State agency medical expert was defective because it was unsigned; and (3) the ALJ's

finding that plaintiff's impairments did not meet or equal the listing were not supported by substantial evidence.  Docket No. 14 at 20.

As noted above, the analysis at step three requires an ALJ to determine whether any "medically severe impairment," alone or in combination with other impairments, is equivalent to any listed impairments so as to preclude "substantial gainful employment." *See* 20 C.F.R. §§ 404.1525-404.1526 & pt. 404, Subpt. P, App. 1; *Fischer-Ross*, 431 F.3d at 731.  Plaintiff has the burden of demonstrating through medical evidence that her impairments "meet all of the specified medical criteria contained in a particular listing."  *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

According to *Social Security Ruling 96-6p*, 1996 WL 374180 (July 2, 1996), the ALJ is responsible for deciding the ultimate legal question of whether a listing is met or equaled.  *SSR 96-6p* at *3; *see SSR 96-5p*, 1996 WL 374183, at *2 (July 2, 1996) (issues reserved to the Commissioner include: (1) whether a claimant's impairment meets or is equivalent in severity to a listed impairment; (2) a claimant's RFC; (3) whether a claimant can perform past relevant work; (4) whether a claimant is disabled). When an ALJ makes a medical equivalence determination, he is not bound by a finding of a State agency medical or psychological consultant.  *SSR 96-6p* at *3.  Nevertheless, Ruling 96-6p requires that the judgment of a physician designated by the Commissioner on the issue of equivalence must be received in the record as expert opinion and given appropriate weight.  *Id*.  Further, the expert's opinion may be accepted in the record by the "signature of a State agency medical or psychological consultant on an SSA-831-

7

U5" (Disability Determination and Transmittal Form).  *SSR 96-6p* at *3.  Lastly, an ALJ

must obtain a medical opinion from a medical expert if additional medical evidence is

received that, in the opinion of the ALJ, may change the State agency expert's finding

regarding the equivalency of the impairments.  *Id*.

In this case, the State agency's RFC Assessment was provided by Dr. Alan

Ketelhohn on December 22, 2004.  R. at 124-32.  Plaintiff argues that the ALJ should

have requested an updated opinion from a State agency medical expert prior to the

hearing on November 21, 2008.  Docket No. 14 at 20.  Plaintiff reasons that between

December 22, 2004 and March 6, 2007 the record had been supplemented by new

medical evidence – reports from Drs. Douglas Hemler and Mary Wilkerson, the

functional capacities evaluation ("FCE"), and the 2006 Magnetic Resonance Imaging

("MRI") – that could have altered the State expert's medical opinion.  *Id*.  Plaintiff

asserts that, instead of consulting medical testimony, the ALJ "took it upon himself to

determine whether the medical evidence" equaled a listing.  Docket No. 14 at 21.

Plaintiff's argument fails for several reasons.  First, *SSR 96-6p* does not require

that an ALJ obtain an updated medical opinion; rather, the Ruling gives the ALJ

discretion to determine whether additional evidence is necessary.  *See SSR 96-6p* at

*3.  Second, it is clear from the ALJ's opinion that he considered the additional

evidence from Dr. Hemler and Dr. Wilkerson.  R. at 329-30.  The ALJ found that plaintiff

had a normal EMG in 2004 with no sign of radiculopathy, neuropathy, or myopathy.  R.

at 327.  He also found that in May 2006, plaintiff had normal neurologic findings despite

plaintiff's complaints of lower extremity weakness.  *Id.*  The ALJ noted that, given their

conclusory opinions regarding plaintiff's ability to work, both treating sources' opinions were primarily based on plaintiff's subjective complaints.  R. at 330.  Additionally, the ALJ found that, although the 2006 MRI was "generally indicative of advanced lumbar spondylosis . . ., the study specifically showed no significant disease."  R. at 327.  Based on this evidence, the Court finds that the ALJ properly reviewed the evidence and it was within his discretion to conclude that an updated report was unnecessary because the evidence was unlikely to change the State agency consultant's medical opinion.  *Oldham*, 509 F.3d at 1258 (stating that courts must uphold ALJ determinations if based on substantial evidence because courts review the ALJ's evidence, not its weight).

Plaintiff's second argument is that Dr. Ketelhohn's name is "printed, but his signature does not appear on form SSA-831-C3 [the Disability Determination and Transmittal Form]."  Docket No. 14 at 20.  Plaintiff asserts that, because Dr. Ketelhohn's name is typed on the form, it does not satisfy *SSR 96-6p*'s requirement that the document contain a signature.  *Id*.  The Court finds this argument unavailing. Ruling 96-6p says that a State medical agent may sign an SSA-831-U5 form, but the Ruling also states that "[o]ther documents, including the Psychiatric Review Technique Form, and various other documents on which medical and psychologist consultants may record their findings" can ensure that an expert opinion has been considered. *SSR 96-6p* at *3.  In the record, the name of Dr. Ketelhohn, who performed the RFC, and the name of Dr. Richard Garnand, who completed the Psychiatric Review Technique Form ("PRTF"), are both typed on the SSA-831-C3 form.  R. at 26. Moreover, Dr. Ketelhohn's signature appears on the RFC Assessment, R. at 131, and

9

Dr. Garnand's signature appears on the PRTF.  R. at 132.  Both of these reports qualify as those "various other documents" on which medical experts typically record their findings and, as such, they ensure that the ALJ considered a medical expert's opinion on equivalence.  *SSR 96-6p* at *3.

Next, plaintiff contends that the ALJ's determination that plaintiff's impairments did not equal a listing was erroneous.  Docket No. 14 at 22.  Plaintiff argues that the ALJ was not a medical professional and should have ordered an updated medical expert opinion to determine whether plaintiff's impairments met Listing 1.04.  *Id*. at 23.

 The ALJ found that, even though the record clearly established the existence of severe lumbar disc disease, plaintiff's impairments did not meet or equal Listing 1.04 (Disorders of the spine).  R. at 326.  For a severe impairment to meet or equal Listing 1.04, the impairment must lead to: (1) nerve root compression resulting in limited range of motion and motor loss with muscle weakness, § 1.04A; (2) arachnoiditis with severe burning or painful dysesthesia resulting in the need for postural changes more than once every two hours, § 1.04B; and (3) spinal stenosis resulting in the inability to ambulate effectively, § 1.04C.  *Fischer-Ross*, 431 F.3d at 735.

Contrary to plaintiff's argument, the ALJ provided specific and detailed findings at step three.  The ALJ found that plaintiff's impairments did not meet or equal Listing 1.04 because there was no evidence of "spinal arachnoiditis, nor . . . evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limited motion of the spine, motor, sensory or reflex loss."  R. at 326.  The ALJ further found that there was no established medically acceptable imaging finding that plaintiff had "lumbar spinal stenosis resulting in pseudoclaudication."  *Id.*  Additionally, objective clinical

10

findings revealed "no significant focal strength or sensory deficits of the lower extremities," and no consistently positive straight-leg test findings in both the "sitting and supine positions." R. at 327. Moreover, despite subjective complaints, the EMG from October 2004 was interpreted as normal concerning both lower extremities, with no evidence of radiculopathy, neuropathy, myopathy or plexopathy. R. at 327.

Finally, plaintiff argues that the ALJ failed to consider the FCE in his step three analysis. Docket No. 14 at 20-21. The ALJ did not mention the FCE in his decision. Although the ALJ had the discretion to consider the FCE, *see Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (medical evidence from outside the adjudicated period should be considered when relevant to the alleged claim of disability), since the FCE was performed on April 24, 2007, the ALJ did not have to accord weight to the result of this evaluation because it fell outside of the relevant period, i.e. November 1, 2002 through March 6, 2007. *See Grabczyk v. Astrue*, No. 09-cv-02155-WYD, 2010 WL 3894113, at *3 (D. Colo. Sept. 30, 2010) (finding that "RFC determination[s] must be made from evidence within the period of claimed disability").

Accordingly, because the ALJ explained the weight he gave to the additional medical evidence, the Court finds he did not err as a matter of law at step three when he did not request an updated expert opinion. The Court further finds that Dr. Ketelhohn's signature on the RFC and Dr. Garnand's signature on the PRTF are enough to satisfy Ruling 96-6p and thus the ALJ's conclusion that plaintiff did not equal or meet Listing 1.04 is based on substantial evidence. *See Rosebrough v. Astrue*, 2009 WL 634699, at *6-7 (D. Kan. March 11, 2009) (finding that the ALJ considered medical expert testimony at step three where the record contained a Disability

Determination and Transmittal Form and Residual Functional Capacity Assessment signed by a State agency medical consultant).

### 3. Medical Evidence

Under the treating source rule, the Commissioner will generally give greater weight to the opinions of treating physicians than to the opinions of non-examining physicians. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). The steps needed to determine whether a treating physician's opinion merits controlling weight are sequential. *Id*. First, the ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *SSR 96-2p*, 1996 WL 374188, at *2 (July 2, 1996). If the answer to this question is "no," then the inquiry at this stage is complete. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005). If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id*. In other words, if the opinion is deficient in either of these respects, then it is not entitled controlling weight. *Id.* If an ALJ decides not to assign controlling weight to a treating source's opinion, he must give "specific, legitimate reasons for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); *see Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *SSR 96-8p*, 1996 WL 374184, at *7 (July 2, 1996) (if the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was adopted).

Plaintiff objects to the ALJ's assessment of the treating sources' medical opinions. Plaintiff claims that the ALJ violated the treating source rule because he gave

the treating sources' opinions "little weight" while giving the State expert's opinion the greatest weight.  Docket No. 14 at 28.  Plaintiff asserts that the opinions of Dr. Hemler, plaintiff's rehabilitative medical specialist, and Dr. Wilkerson, plaintiff's family physician, were entitled controlling weight.  Docket No. 14 at 21.

### a.  Dr. Hemler's Reports

On July 19, 2006, Dr. Hemler noted in his report that it was the first time in almost eighteen months that plaintiff had made a consulting visit.  R. at 407-09.  Dr. Hemler reported that plaintiff: (1) had some axial pain that traveled to the lower extremities; (2) had paresthesia in both lower extremities; (3) could sit, stand, and walk between two to four hours a day; (5) had signs of depression; (6) had hearing loss because of chronic sinus infection; and (7) showed signs of obesity.  *Id*.

He noted that the results of the MRI scan revealed plaintiff had a mild protrusion and degenerative changes at the L5-S1 level and at L3-L4.  *Id*.  In addition, plaintiff had a mildly antalgic gait, but no spasticity or ataxia, and her shoulders, elbows, writs and hips were all age appropriate.  *Id*.  Based on this visit, Dr. Hemler concluded that, because of plaintiff's obesity, back pain, and hearing problems, even at a sedentary level plaintiff was highly unlikely to be competitively employable over the next several years.  R. at 408.

The ALJ found that Dr. Hemler's opinion was inconsistent with other evidence in the record.  R. at 329-30.  The ALJ stated that Dr. Hemler's report deserved little weight because it "offered no specific functional restrictions" to support any greater limitations.

R. at 329.  In this instance, the ALJ erred because he did not provide specific evidence from the record to reject Dr. Hemler's opinion.  *Drapeau*, 255 F.3d at 1213.

However, despite this error, the Court finds that the ALJ's conclusion is supported by other substantial evidence in the record.  *See Hamilton v. Sec'y Health & Human Servs.* 961 F.2d 1495, 1500 (10th Cir. 1992) ("[a]s long as substantial evidence supports the ALJ's determination, the [Commissioner's] decisions stands.").  Dr. Hemler's findings in his July 2006 report are similar to his findings in October 2004 in that the patient had: (1) back pain; (2) lower extremity pain; (3) weight gain; and (4) knee problems.  R. at 150.  In fact, almost every report documented by Dr. Hemler since 1999 provides the same list of symptoms, R. at 147-70, yet, in the July 2006 report, Dr. Hemler does not state why the same symptoms plaintiff manifested for years now make her "unemployable."  The ALJ's opinion is further supported by the fact that plaintiff was able to work for nine months in 2005 while exhibiting the same symptoms. R. at 324.  Moreover, plaintiff's infrequent appointments with Dr. Hemler – an absence for five years (1999-2004) followed by an eighteen month absence – supports the ALJ's conclusion that Dr. Hemler's determination that plaintiff was unemployable appears conclusory since Dr. Hemler's opinion is based on sporadic examinations.  20 C.F.R. § 404.1527(d)(2) (weight given to treating sources opinion may rely on frequency of examination and consistency of opinion with the record as a whole).

In his second report, written on October 25, 2006, Dr. Hemler stated that plaintiff has issues with depression, obesity, and chronic back pain.  He concludes that "she is competitively disabled from employment based on the numerous issues involved."  R. at 223.  The second report was not accompanied by any medical, clinical, or laboratory

14

evidence.  *Id*.  Accordingly, the ALJ afforded Dr. Hemler's second opinion little weight because he found that the opinion was "unsupported by contemporaneous clinical findings" and conflicted with other evidence including "the claimant's admitted activities and abilities both before and after [Dr. Hemler[ offer[ed] this assessment."  R. at 301.

The Court finds no error in the ALJ's rejection of this opinion.  As the ALJ noted, Dr. Hemler's conclusion was based primarily on the patient's subjective account of her condition.  R. at 223.  Unlike Dr. Hemler's July 19, 2006 report, which included several headings – assessment, neurologic, physical examination, review of systems – this report only contained a "subjective" heading signaling that Dr. Hemler included evidence solely from plaintiff's perspective.  *Id*.  Second, Dr. Hemler provided very little explanation or objective support accompanying this conclusion, which is not supported by "medically acceptable clinical and laboratory diagnostic techniques.*"  Hackett,* 395 F.3d at 1174.  The opinion also provided a conclusion as to plaintiff's disability, which is a determination reserved for the ALJ.  *See Lopez v. Barnhart*, 183 F. App'x 825, 827 (10th Cir. 2006) ("Sometimes . . . the treating physician also offers an opinion that claimant is totally disabled, but . . . such an opinion is not dispositive because final responsibility . . . is reserved to the [ALJ].").  As a result, because the ALJ gave specific, legitimate reasons for rejecting this opinion and his decision reflects consideration of the appropriate factors, the Court finds no error in the ALJ's rejection of it.  *See Watkins*, 350 F.3d at 1301.

### b.  Dr. Wilkerson's Letter

In her letter, Dr. Wilkerson opined that plaintiff would have difficulty staying "gainfully employed" because of her difficulty sitting for long periods of time.  R. at 207. Plaintiff argues that the ALJ erred when he rejected Dr. Wilkerson's report because an ALJ may not reject a treating physician's opinion based on his own credibility judgments.  Docket No. 14 at 27.

The ALJ gave Dr. Wilkerson's letter "little weight" because her determination was unsupported by her own clinical records.  R. at 330.  The ALJ found that Dr. Wilkerson's medical reports, R. 173-99, focus primarily on Dr. Wilkerson refilling plaintiff's prescriptions, discussing plaintiff's obesity, treating skin ulcers and bilateral foot pain, and helping plaintiff with her depression.  R. at 330.  The ALJ also noted that Dr. Wilkerson's main concern in 2005 and 2006 was plaintiff's use of alcohol and cocaine because this had damaged plaintiff's nasal cartilage.  *Id*.  Based on this review, the ALJ concluded that Dr. Wilkerson's opinion was conclusory because it did not rely on adequate medical techniques, provide an assessment of plaintiff's physical functional capacity, or provide an explanation of how plaintiff would perform work at different levels.  R. at 331; *see Hackett,* 395 F.3d at 1174.  Because the ALJ gave specific, legitimate reasons for rejecting this opinion and his decision reflects consideration of the appropriate factors, the Court finds no error with the ALJ's giving this opinion "little weight."  *See Watkins*, 350 F.3d at 1301.

### c.  Dr. Ketelhohn's RFC

Plaintiff argues that Dr. Ketelhohn's "check-the-box" RFC should not have been given the greatest weight because the opinion was not based on the entire record. Docket No. 14 at 28.  Plaintiff argues that the treating physicians should have been given more weight because of the nature of their relationship with plaintiff.  *Id.*  Plaintiff's argument in this regard lacks merit.

Despite the deference usually afforded treating source opinions, those opinions are not sacrosanct and, in appropriate circumstances, opinions from state agency medical consultants may be entitled to greater weight than the opinions of treating sources.  *See Webb v. Astrue*, No. 10-cv-01616-REB, 2011 WL 124443, at *4 (D. Colo. Jan. 14, 2011).  Here, as noted above, the ALJ found that Dr. Hemler's October 2006 letter and Dr. Wilkerson's reports were inconsistent with the medical evidence.  R. at 330.  Because the ALJ cited specific evidence to reject the treating physician's opinions, he was free to determine that Dr. Ketelhohn's opinion would be given the greatest weight because it best reflected plaintiff's demonstrated functional capacities, clinically and as testified to at the hearing.  *See Meredith v. Astrue*, No. 09-cv-02655-REB, 2010 WL 3894123, at *3 (D. Colo. Sept. 29, 2010) ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act and in appropriate circumstances, [their] opinions ... may be entitled to greater weight than the opinions of treating or examining sources.") (citations omitted).

### *4. The ALJ's Credibility Findings*

Plaintiff claims that the ALJ's credibility findings are not based on substantial evidence or are insufficient to support his finding that Ms. McCaffrey's allegations of pain and limitations were not credible.  Docket No. 14 at 28.  Plaintiff argues that the ALJ should not have considered plaintiff's ability to work from April 2005 to December 2005 as evidence that her disability was not an impairment; that the ALJ's conclusion came from one incongruous comment in the entire record; and that he did not consider all factors in combination when making his determination.  *Id.*

The ALJ found that plaintiff's statements concerning the "intensity, persistence and limiting effects" of her symptoms were not credible.  R. at 328.  In support, the ALJ found that plaintiff retained the ability to lift as much as 30 pounds from floor level; could walk for at least half a mile with her cane; engaged in substantial gainful work activity; the record contained inconsistent reports as to the urinary tract infection; there was evidence of increased cocaine use and alcohol consumption; and plaintiff had failed to see Dr. Hemler for five years.  R. at 327-331.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  Tenth Circuit precedent does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth specific evidence he relies on in evaluating the claimant's credibility.  *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).

Here, the ALJ presented a thorough analysis that was closely linked to evidence in the record.  The ALJ noted inconsistencies between plaintiff's November 2006 testimony and the record about the effects of physical therapy and her use of cocaine. R. at 329.   The ALJ then found that plaintiff's self-reports of pain were inconsistent with her infrequent appointments with Dr. Hemler for a period of five years and then eighteen months during her alleged disability period.  R. at 329; *see SSR 96-7p*, 1996 WL 374186, at *5-6 (July 2, 1996).  Moreover, plaintiff's appeal claims that she has had urinary tract problems since 1998, while evidence of such problems did not appear in her patient file until 2006.  *Id*.  Additionally, the ALJ found that despite her back pain and her need for frequent breaks the record shows that this did not impede her ability to perform relevant work.

In conclusion, although plaintiff suggests otherwise, this is not a case where "specific facts behind the generalities" regarding plaintiff's activities and statements "paint a very different picture" than the one painted by the ALJ.  *Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011).  After examining the record as a whole, the Court is persuaded that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence and therefore meet the legal standard.  *See generally Kepler*, 68 F.3d at 391.  Plaintiff's argument to the contrary constitutes an invitation to this Court to engage in impermissible re-weighing of the evidence and to substitute the Court's judgment for that of the Commissioner, an invitation the Court declines.  *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

### 5.   The ALJ's RFC Assessment

As stated earlier, plaintiff claims the ALJ erred in concluding that plaintiff could perform her past relevant work despite her depression.  An ALJ must "consider the limiting effects of all . . . impairment(s), even those that are not severe, in determining [the RFC]."  20 C.F.R. § 404.1545(e).  "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim."  *SSR 96-8p*, 1996 WL 374184, at *5 (July 2, 1996).

At step two, the ALJ determined that plaintiff's depression was not a "severe impairment."  R. at 326.  The ALJ found that plaintiff's mental symptoms were adequately controlled through anti-depression medication and that the mental symptoms were only a mild limitation on plaintiff's overall functioning.  R. at 325.  The ALJ concluded that Dr. Wilkerson's intermittent reports of plaintiff's depression were not reliable because they were based on subjective complaints and not supported with objective findings.  *Id*.  He also found that Dr. Wilkerson's reports did not substantiate the finding of a specific mental deficit because plaintiff was never referred to or treated by a mental health specialist.  *Id*.  Based on these facts, the ALJ concluded that Dr. Wilkerson's reports did not support the existence of a severe depressive disorder.

The ALJ instead relied on Dr. Lipson's consultative report, which he found was plaintiff's only detailed mental status evaluation.  *Id*.  Dr. Lipson's report noted that plaintiff had a major depressive disorder with a Global Assessment Functioning

("GAF")[2] score of 65, but described the condition as well controlled and as creating only a mild level of impairment.  *Id.*  The ALJ noted that Dr. Lipson concluded plaintiff had no appreciable mental limitations and would have only mild deficits in understanding or remembering both simple and complex instructions.  R. at 325.  Based on Dr. Lipson's findings, and the fact that plaintiff's previous loss of employment was not related to mental infirmity, the ALJ determined that plaintiff did not suffer from a severe mental impairment and was capable of performing her past work during the relevant period.  R. at 325.

At step four, however, the ALJ made no findings on what, if any, work-related limitations resulted from plaintiff's nonsevere depressive disorder.  R. at 328-30.  He did not include any such limitations in his RFC.  R. at 328.  Because the RFC did not include these findings, the potential limitations from the mental impairments were not presented in the ALJ's hypothetical question to the vocational expert ("VE").  R. at 332. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (stating that hypothetical to vocational expert "must include all (and only) those impairments borne out by the evidentiary record").

When determining the RFC, the ALJ was required to consider the limiting effects of all impairments, even the mental impairments he found not severe at step two.  *See*

---

[2] The GAF scale is used by clinicians to report an "individual's overall level of functioning."  *Weigel v. Astrue*, 425 F. App'x 706, 708 n.3 (10th Cir. 2001) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000)).  A GAF score of 65 is in the middle of the GAF range and indicates "[s]ome mild symptoms . . . but generally functioning very well, has some meaningful interpersonal relationships."  *DSM-IV* at 34; *See e.g., Pagan v. Astrue*, No. 09-cv-02875-ZLW, 2011 WL 1060392, at *4 (D. Colo. March 22, 2011).

*Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  In the RFC, the ALJ stated that he considered plaintiff's "subjective complaints and the history she provided to doctors, as well as any written information she provided to the Social Security Administration." R. at 331.  Ordinarily, the ALJ's failure to discuss a mental impairment at step four would not warrant reversal so long as the ALJ considered all of the medical evidence in the record.  *See Hackett*, 395 F.3d at 1173 (noting "our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter"); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (noting that when ALJ discusses medical evidence in detail and that evidence does not conflict with the ALJ's conclusion, the need for the ALJ to expressly analyze evidence is weakened).  In this case, however, Dr. Lipson's opinion–upon which the ALJ relied–found that plaintiff would have mild deficits in understanding and remembering complex and simple instructions.  R. at 230. The ALJ's RFC focused almost entirely on plaintiff's physical impairments, but did not discuss how her mental infirmity could impact her ability to sustain employment.

After determining a plaintiff's physical and mental RFC, an ALJ must determine the physical and mental demands of plaintiff's past relevant work.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  This analysis is followed by an assessment of whether the plaintiff has the ability to meet the job demands notwithstanding her physical and mental limitations.  *Id.*  Although the burden remains on the claimant to establish that she is unable to perform her past work, "if the ALJ fails to make the requisite inquiry regarding the exertional demands of a claimant's prior work and the

record is devoid of evidence on that issue, a case must be remanded to develop an

adequate record." *Hayden v. Barnhart*, 374 F.3d 986, 991 (10th Cir. 2004).

During the hearing, The ALJ posed the VE a hypothetical question based on the

following RFC:

> I'd like you to assume there's an individual who could lift and carry 20
> pounds occasionally, 10 pounds frequently.  The person could sit six
> hours during an eight-hour workday.  Could stand and walk two hours
> during an eight-hour workday.  The person could occasionally climb,
> stoop, kneel, crouch, and crawl.  The person would need to use a cane to
> ambulate in the workplace.  Could such a person as I've just described
> perform any work previously performed by this claimant?

R. at 441-42.

In response, the VE submitted that plaintiff could return to her previous job which is a

sales manager in the Department of Labor's *Dictionary of Occupational Titles* (DOT).

Appx. C. § III (4th ed. Rev.1991).  Pursuant to DOT 163.167-018, the job requires, *inter*

*alia*, an SVP ["Specific Vocational Preparation"] of 8, the ability to apply deductive

reasoning, problem solving, memorization of information, and coordinating work activity

between members of a work group.

Based on this evidence, the Court finds that the ALJ's RFC determination was

not based on substantial evidence because it did not contain the potential limitations

from plaintiff's nonsevere mental impairments.  Specifically, the Court cannot be

assured whether an individual who is found to have mild mental impairments could

perform her previous work requiring SVP-8.  Moreover, the Court finds that the

hypothetical posed to the VE was similarly lacking, since without the inclusion of the

nonsevere mental impairments it did not provide an adequate comparison of how

plaintiff's capabilities during the relevant period affected her ability to perform her

previous work.  *See Evans*, 55 F.3d at 532; *Confere v. Astrue*, 235 F. App'x 701, 703-04 (10th Cir. 2007) (remanding because the ALJ's RFC reflected some of the limitations but not others and the hypothetical did not include all of the limitations) (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).  Although during the hearing plaintiff's counsel questioned the ALJ regarding plaintiff's potential mental impairments, R. at 446, the Court is unclear whether the VE's response considered plaintiff's severe impairments in combination with the nonsevere impairments.  R. at 446 ("if [plaintiff has a] moderate level of [sic] inability to do [her past relevant work] because of mental issues *or* inability to attend [work] because of physical problems") (emphasis added).  As a result, the Court is not able to confidently determine that the ALJ's failure to include all impairments was harmless error.  *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing ALJ determinations are subject to harmless error analysis).

The ALJ did not proceed past step four, so there is no indication or basis to conclude that the failure to include the restriction in the hypothetical would have been mooted by the results at step five.  The Court cannot, in short, "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Allen*, 357 F.3d at 1145.  Therefore, the Court will reverse and remand for the ALJ to correct this error.  *See McFerran v. Astrue*, 2011 WL 3648222, at *3 (10th Cir. Aug. 19, 2011).

### III.   CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the December 11, 2008 decision of the Commissioner that plaintiff was not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DATED September 30, 2011.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge